## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EVA BARRETT,

        Petitioner,

v.                              Civil Action No. 1:19cv102
                                    (Judge Kleeh)

WARDEN ENTZEL,

        Respondent.

### REPORT AND RECOMMENDATION

### I. Background

On May 6, 2019, the *pro se* petitioner, Eva Barrett ("Barrett"), an inmate at Hazelton Secure Female Facility ("HSFF") in Bruceton Mills, West Virginia, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and paid the requisite filing fee.

This matter, before the undersigned for review, report, and recommendation pursuant to Local Rule of Prisoner Litigation Procedure ("LR PL P") 2, is ripe for review.

### II. Facts[1]

On February 20, 2018, in the United States District Court for the Eastern District of Tennessee, Petitioner entered a plea to the lesser included offense of Count One of a superseding indictment, a charge of conspiracy to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B).  ECF No. 135. On June 26, 2018, Petitioner was sentenced to a 46-month term of imprisonment to be served concurrently to any anticipated

---

[1] The facts are taken from the Petitioner's criminal Case No. 2:17cr92-6, in the United States District Court for the Eastern District of Tennessee, available on PACER. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record"); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records.'").

    All CM/ECF references in the Facts section of this Report and Recommendation refer to entries in the docket of Petitioner's underlying criminal case.

sentence that was then- yet-to-be imposed in Case No. 2017-CR-69113 in the Criminal Court for Sullivan County, Tennessee, to be followed by a four-year term of supervised release. ECF No. 258. Petitioner did not file a direct appeal. On May 31, 2019, she filed a Motion to Vacate under 28 U.S.C. § 2255. ECF No. 355. That motion is still pending.

### III. <u>The Petition</u>

Barrett's petition avers that she is currently serving her sentence at HSFF, where she is a participant in the Bureau of Prisons' ("BOP") Residential Drug Abuse Program ("RDAP") as set forth in 18 U.S.C. § 3621(e). ECF No. 1-1 at 2. She contends that at sentencing, her offense level was increased by two (2) points because a firearm was found in her home.[2] <u>Id.</u> She contends that once the BOP reviewed her PSR and noted the firearm enhancement, it found her ineligible for early release upon the completion of RDAP, based on the BOP's Program Statement ("P.S.") 5162.05 § 4; <u>see also</u> 28 C.F.R. § 550.55. <u>Id.</u> at 3. She argues that the conclusion contained in P.S. 5162.05 § 4 that a "defendant with such an enhancement is ineligible for a sentence reduction [under RDAP] because in the ordinary case 'possession of a dangerous weapon during the commission of a drug offense poses a substantial risk that force may be used against persons or property[]'" does not require a finding of possession during the commission of an offense, and merely concludes that a crime was violent because there was a possibility that force might be used. <u>Id.</u> She contends that this language violates due process and must be struck down as invalid under a <u>Chevron</u>[3] analysis, because it fails to put defendants on notice of what acts violate the law. <u>Id.</u> at

---

[2] Petitioner's PreSentence Investigation Report ("PSR") indicates that a state search warrant was executed on Petitioner's residence, and in addition to approximately one-half pound of processed marijuana, $4,680.00 in U.S. currency, and MoneyGram receipts, a Jennings 9mm semi-automatic pistol was located.  <u>See</u> E.D. Tenn. Case No. 2:17cr92-6, ECF No. 72, ¶ 29 at 6.

[3] <u>Chevron, U.S.A. Inc. v. NRDC, Inc.</u>, 467 U.S. 837, 844 - 45 (1984)(noting that where Congressional intent is unclear clear, an agency's interpretation of a statute will be upheld unless "arbitrary, capricious, or manifestly contrary to the statute.").

5. Further, she argues that the language is unconstitutionally vague under <u>Johnson v. United States</u>, 135 S.Ct. 2551 (2015)(holding that the residual clause of the Armed Career Criminal Act ("ACCA") defining "violent felony" was unconstitutionally vague.) and <u>Sessions v. Dimaya</u>, 138 S.Ct. 1204 (2018)(<u>Dimaya</u> is an extension of the <u>Johnson</u> "void for vagueness" holding, finding that a similar provision of the Immigration and Nationality Act ("INA") provides that any alien convicted of an aggravated felony, including "a crime of violence" as defined in 18 U.S.C. § 16, will be deported or removed was also void for vagueness.).  <u>Id.</u> at 3 – 4.

Barrett admits that she did not present the facts of the petition through the prison's internal grievance procedure, because "[a]dministrative remedy is unnecessary because the same body or person that'll be reviewing the administrative remedy has already stated the position[.]" <u>Id.</u> at 7 - 8. Barrett further added that "[t]he issue has already been answered at the BOP level regardless of administrative action remedies[.]" <u>Id.</u>

As relief, Barrett requests that this Court strike down the prohibition against sentence reductions when a person receives a sentence enhancement due to a firearm, and order that her sentence be reduced upon her successful completion of RDAP. <u>Id.</u>

## IV. <u>Analysis</u>

### A. <u>Exhaustion of Administrative Remedies</u>

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to any federal law must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e) (a). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002), and is required even when the relief sought is not available. <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). Prisoners are required to exhaust their administrative remedies *prior to*

the filing of their habeas petitions. McClung v. Shearin, 90 Fed. Appx. 444 (4th Cir. 2004) (federal prisoners must exhaust their administrative proceedings prior to filing § 2241 petitions); United States v. Odiana, 7 F.3d 227 (4th Cir. 1993) (administrative exhaustion required prior to filing § 2241); United States v. Mercado, 37 Fed. Appx. 698 (4th Cir. 2002) (dismissal for failure to exhaust BOP's administrative remedies prior to filing § 2241).

In Woodford v. Ngo, 548 U.S. 81, 84 - 85 (2006), the United States Supreme Court held that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full and proper* exhaustion." Woodford, 548 U.S. at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101 - 02.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, *et seq*. If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. (For inmates confined at FCI-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[4] An inmate is not

---

[4] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional

deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; <u>Gibbs v. Bureau of Prison Office</u>, 986 F.Supp. 941, 943 (D. Md. 1997).

Exhaustion of administrative remedies as applied to habeas corpus cases is not a requirement imposed by statute. Rather, exhaustion prerequisites in habeas corpus actions arising under § 2241 are judicially imposed. <u>See</u> <u>Martinez v. Roberts</u>, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a § 2241 petition); <u>Moscato v. Federal Bureau of Prisons</u>, 98 F.3d 757 (3rd Cir. 1996); <u>McCallister v. Haynes</u>, 2004 WL 3189469 (N.D. W.Va. 2004).  Because the exhaustion requirement is only judicially imposed in habeas proceedings, a court has discretion to waive the requirement in certain circumstances. <u>See</u> <u>LaRue v. Adams</u>, 2006 WL 1674487 *8 (S.D. W.Va. June 12, 2006) (citing <u>Smith v. Angelone</u>, 111 F.3d 1126, 1129-31 (4th Cir. 1997) *cert. denied* 521 U.S. 1131 (1997).[5]  A number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. <u>See</u> <u>id.</u> at *5 – 7. Although the Fourth Circuit has not directly addressed

---

Director within 30 calendar days; and by the General Counsel within 40 calendar days . . . If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

[5] In <u>LaRue</u>, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. <u>LaRue</u>, 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneously with the PLRA and that under the AEDPA, Congress established separate procedures for addressing abusive habeas filings. <u>Id.</u> Moreover, the Court found that habeas actions were not typical civil actions, because they involve someone's liberty, rather than claims of mere civil liability. <u>Id.</u> The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. <u>Id.</u> (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.  <u>See also</u>; <u>Sewell v. Carter</u>, (N.D. W.Va. ECF Nos. 20, 22)(1:13cv120); <u>Hunter v. O'Brien</u>, (N.D. W.Va. ECF Nos. 33, 37)(5:12cv101).

this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions. See Larue at *8.

In this matter, the case has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits. However, even if Petitioner were not required to exhaust administrative remedies before bringing this action, her claim is nonetheless without merit and should be denied.

**B. Petitioner's Eligibility for Early Release Under RDAP**

The Violent Crime Control and Law Enforcement Act of 1994 amended 18 U.S.C. § 3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). The Act is applicable to persons convicted of a "nonviolent offense" and allows the BOP to reduce a prisoner's sentence by up to one year as an incentive for the successful completion of the program. See 18 U.S.C. § 3621(e)(2)(B); see also 28 C.F.R. § 550.58. Initially, a Drug Abuse Program Coordinator ("DAPC") decides whether a prisoner qualifies to participate in the RDAP and is eligible for the sentence reduction. After that initial determination of eligibility, in accordance with BOP P.S. 5331.02, the DAPC will request a review of the inmate's current offense and prior convictions from Designation and Sentence Computation Center's ("DSCC") legal staff.[6] Inmates may be deemed ineligible for early release if they are found to have felony convictions for any offense that has as an element the actual, attempted, or threatened use of physical force

---

[6] See 18 U.S.C. § 3621(e), §7.b, Early Release Procedures.

against the person or property of another, or an offense that involved the carrying of, possession, or use of a firearm or other dangerous weapon, during the commission of a crime.[7]

Pursuant to the Crime Control Act of 1990, Congress required the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). In 1994, to encourage inmates to participate in such programs, Congress authorized the BOP to reduce by up to one year the sentence of "a prisoner convicted of a nonviolent offense" who successfully completes a treatment program. 18 U.S.C. § 3621(e)(2)(B);[8] Pelissero v. Thompson, 170 F.3d 442, 443 - 44 (4th Cir. 1999). Congress delegated to the BOP authority to administer its drug abuse programs, see 28 C.F.R. § 550.56, and gave the BOP the discretion to determine which prisoners may participate in RDAP and which prisoners are eligible for sentence reductions. Lopez v. Davis, 531 U.S. 230 (2001).

Because § 3621(e) does not define "nonviolent offense" or set forth criteria for eligibility for early release, the BOP is vested with discretionary authority to determine when an inmate's sentence may be reduced under the statute. Pursuant to this authority the BOP has promulgated regulations to implement the statute. The regulation set forth at 28 CFR 550.55, et seq. and in P.S. 5162.05, Categorization of Offenses, have been upheld as a valid exercise of discretion under 18

---

[7] 28 CFR §550.55(b)(5).

[8] This section provides as follows:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program **may** be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (emphasis added).

U.S.C. § 3621 (e)(2)(B). See Lopez v. Davis, 531 U.S. 230, 240 (2001); Cunningham v. Scibana, 259 Fed 3d 303, 306 (4th Cir. 2011).

Title 28 C.F.R. Section 550.55 provides, in part, that prisoners whose current felony offense "involve the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device)" or "by its nature or conduct, presents a serious potential risk of physical force against the person or property of another" are ineligible for early release. 28 C.F.R. §550.55(b)(5)(ii) and (iii).

Although Petitioner's offenses are not listed among the "Crimes of Violence in *All Cases*" (emphasis in original) as defined by P.S. 5162.05 § 3(a), they are included in its § 4: "Offenses that at the Director's Discretion Shall Preclude an Inmate's Receiving Certain Bureau Program Benefits." (Specifying early release as an example of an included benefit). Such offenses include felonies that (1) have an element, the actual, attempted, or threatened use of physical force against the person or property of another; (2) involve the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device); or (3) by its nature or conduct presents a serious potential risk of physical force against the person or property of another. See id. The criminal offenses listed in Section 4b (including 21 U.S.C. §§ 841 and 846 convictions) may or may not satisfy the standard, depending on whether the offense involved the use or threatened use of force, or risk of bodily injury as reflected in a Specific Offense Characteristic ("SOC") enhancement to the Total Offense Level. See E.D. Tenn. Case No. 2:17cr92-6, ECF No. 172 § 34 at 7. In § 4d of BOP P.S. 5162.05 (also 28 CFR § 550.55 (b)(6)), a conspiracy offense (21 U.S.C. § 846) prevents a prisoner from receiving certain benefits if the underlying offense would preclude receiving the benefits based on any other portions of Section 4.

Here, Petitioner's underlying criminal record confirms that the United States Probation Officer recommended a two-level increase for possessing a firearm during the commission of the drug offense. See E.D. Tenn. Case No. 2:17cr92-6, ECF No. 353 at 2. Therefore, the BOP exercised its discretionary authority to determine that the 21 U.S.C. § 841 offense and sentencing enhancement precluded Petitioner's early release. Because Petitioner's underlying offense precluded her early release, it follows that the 21 U.S.C. § 846 conspiracy offense precluded early release as well. See 28 C.F.R. § 550.55(b)(6); P.S. 5162.05(4)(d).

Although Petitioner frames her challenge in the nature of an unconstitutional "void for vagueness" attack on the language of P.S. 5162.05 § 4 as being subject to an arbitrary or capricious interpretation in violation of Congressional intent, with the result that her eligibility for discretionary release was denied, to the extent that the language could be construed as a direct challenge to the individual decision made by the BOP in her case, such matters are expressly precluded from judicial review by the language of 18 U.S.C. § 3625. The decision to admit an inmate to RDAP (and the resulting possibility of an earned sentence reduction) is reserved to the discretion of the BOP under the language of 18 U.S.C. § 3629(e)(2)(B). Congress specifically excluded these subsections from judicial review under the Administrative Procedures Act ("APA") by the express terms of § 3625, which provides in relevant part "the provisions of § 554 and § 555 and §§ 701-706, of Title V, United States Code, [the APA] do not apply to the making of any determination, decision, or order under this subchapter. 18 U.S.C. § 3625. As a result, the BOP's individual decision to deny Petitioner access to the discretionary sentence reduction is not reviewable by this Court under the Act. Savage v. Wilson, No. 2:13cv578, 2014 WL 1902709, at *5 (E.D. Va. May 8, 2014); Schlager v. Stewart, No. 5:11cv118, 2012 WL 589205, at *1 (N.D. W.Va. Feb. 22, 2012).

Admittedly, § 706(2)(A) of the APA states that a court will "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). Stated differently, "even where action is committed to absolute agency discretion by law, courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations." Garcia v. Nagle, 660 Fed 2nd 983, 988 (4th Cir. 1981). This analysis addresses first whether any cognizable claim has been presented and second whether an agency's interpretation of a statute is contrary to well-settled law. See Webster v. Doe, 486 U.S. 592 (1988); Neal v. United States, 516 U.S. 284 (1996). Apart from Petitioner's conclusory and self-serving contentions regarding the need for a Chevron analysis, she provides no factual or legal grounds to substantiate her claim that the BOP exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations when it determined her ineligible for early release.

Furthermore, as noted above, the regulation relied upon by the BOP to deny Petitioner access to early release incentive is found in 28 CFR § 550.55, re-issued in 2009. As it pertains to Petitioner's claim, the rule declares certain inmates ineligible for early release, including those who have a current felony conviction for "an offense that involves the carrying, possession, or use of a firearm or other dangerous weapon," as well as an offense that, "by its nature or conduct, presents a serious potential risk of physical force against the person or property of another." 28 CFR § 550.55(b)(5)(ii)-(iii). Liberally construed, Petitioner claims the rule is contrary to the statutory intent expressed in § 3621(e)(2)(B), which specified only those convicted of nonviolent offenses could be considered for early release. When issued in 2009, the rule was accompanied by the following statement of purpose:

> There is a significant potential for violence from criminals who carry, possess or use firearms. As the Supreme Court noted in Lopez v. Davis, "denial of early

release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life." 531 U.S. 230, 240 (2001). The Bureau adopts this reasoning. The Bureau recognizes that there is a significant potential for violence from criminals who carry, possess or use firearms while engaged in felonious activity. Thus, in the interest of public safety, these inmates should not be released months in advance of completing their sentences.

Also, early release would undermine the seriousness of these offenses as reflected by the length of the sentence which the courts deemed appropriate to impose.

Whitaker v. Stansbury, No. 3:03cv662, 2009 WL 3762320, at 4 (E.D. Va. Nov. 9, 2009) (quoting 74 Fed. Reg. 1892-01, 1895, Jan. 14, 2009).

This rule and its explanatory statement clearly satisfied the BOP's obligation to provide a "rational connection between the facts found and the choice made." See Lopez, 531 US at 240. Public safety is clearly affected by the significant potential for violence resulting from armed offenders. As a result, neither promulgation of the rule, nor applying it to exclude Petitioner from the discretionary sentence reduction, violates the APA. Motor Vehicle Mfrs. Ass'n, 463 US at 433 (quoting Burlington Truck Lines Inc. v. United States, 371 U.S. 156, 168 (1962)).

Further, to the extent Petitioner is asserting that the BOP determination at issue herein constitutes a violation of her right to due process, her argument is unavailing. The Due Process Clause applies only when government action deprives a person of a protected liberty or protected interest under the Fifth Amendment. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). "[T]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Id. Courts have previously noted that a prisoner does not have a protected liberty interest in discretionary early release under 18 U.S.C. 3621(e) for completion of the RDAP. See e.g., Robinson v. Gonzalez, 493 Fed Supp 2nd 758, 763 (D. Md. 2007); Simmons v. Warden, FCI Cumberland, 2011 WL 147294 *3 (D. Md. 2011).

Finally, the determination of early release eligibility is separate and apart from the determination of eligibility for RDAP participation. Successful completion of the RDAP does not compel the BOP to grant early release. See Lopez, 531 U.S. at 239 - 41 (The BOP has the authority, but no duty, to alter conditions of confinement and to reduce the terms of imprisonment). The BOP may exclude inmates from early release either categorically or on a case-by-case basis. See id. at 244. Accordingly, the facts of this petition do not implicate a constitutionally protected liberty interest and there is no violation of due process.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that this matter be **DISMISSED with prejudice**.

The Petitioner is notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas S. Kleeh, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, the **Petitioner shall have fourteen days** (filing of objections) and then three days (mailing/service), from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12(d). Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). A copy of such objections shall be served on Judge Kleeh.

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, at her last known address as reflected on the docket.

Further, upon entry of this Report and Recommendation, the Clerk is also **DIRECTED** to terminate the Magistrate Judge association with this case.

DATE: September 4, 2019

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATE MAGISTRATE JUDGE

13